IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VIRGINIA L. GARBER,

                       Plaintiff,

                                       Civil Action No.
      v.                           1:10-CV-00845 (GTS/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                       Defendant.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

EMPIRE JUSTICE CENTER         LOUISE M. TARANTINO, ESQ.
119 Washington Avenue
2nd Floor
Albany, NY 12210

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN     TRACY UDELL, ESQ.
United States Attorney for the       Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF REGIONAL GENERAL     SOMMATTIE RAMRUP, ESQ.
COUNSEL
Social Security Administration
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Virginia Garber, who alleges that she is disabled as a result of suffering from several medical conditions including systemic lupus erythematosus ("SLE"), fibromaylagia, status post cervical spinal fusion, status post cardiac stent due to coronary artery disease ("CAD"), fatigue and pain, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of a finding by the Social Security Commissioner that she is not disabled, and therefore not entitled to receive supplemental security income ("SSI") benefits under the Social Security Act ("Act"). In support of her challenge, plaintiff maintains that the findings leading to the disability determination, including an assessment of her residual functional capacity ("RFC"), upon which the disability decision hinges in part, are not supported by substantial evidence.

Having carefully reviewed the record now before the court in light of plaintiff's arguments, and after applying the requisite deferential standard of review, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial

2

evidence.

I.     BACKGROUND

Plaintiff was born in August 1961; at the time of the hearing in this matter, held on March 18, 2009, she was forty-seven years old. Administrative Transcript at p. 4.[1]  Plaintiff is married and has three children.  AT 102-03, 382. Since March 1, 2007, she has lived with her husband in a single-story dwelling in Sharon Springs, New York.  AT 28-29, 103.

Plaintiff last attended school in or about June of 1978, completing the ninth grade at the age of seventeen.  AT 30, 145.  Plaintiff did not graduate from high school, although she is currently in pursuit of a general educational development ("GED") diploma, and has received no other educational training with the exception of taking a computer class for displaced homemakers in 2007.  AT 31-31, 152-53, 158.

Plaintiff is not currently working, AT 31, and prior to 2008 had only been casually employed for brief periods in various settings.  AT 140.

---

[1]     Portions of the administrative transcript, which was filed by the Commissioner in this action, Dkt. No. 8, and is comprised principally of the medical records and other evidence before the agency when its decision was made, will hereinafter be cited as "AT____."

Plaintiff's last employment was at a Walmart store, located in Cobleskill, New York, beginning in March or April of 2008.[2]  AT 33, 108, 182. Unfortunately, plaintiff suffered a workplace injury at Walmart on September 12, 2008, when she was struck in the face by a box, causing her to hyperextend her cervical spine.  AT 499.  As a result of that injury plaintiff stopped working at Walmart on September 22, 2008, and did not resume working there until December 22, 2008.  AT 34, 574.  After a brief additional period of work, plaintiff left Walmart again on January 13, 2009, when she began experiencing chest pain.  AT 34, 570.  Plaintiff received treatment in November and December 2008 from Maureen Tackonske, a physical therapist at Cobleskill Regional Hospital, due to her cervical sprain from her workplace injury at Walmart in September 2008.  AT 18.

While employed at Walmart, plaintiff worked in the delicatessen slicing meat, frying food, and performing clean-up of dishes.  AT 35. Plaintiff's daily duties there required her to be on her feet for most of her usual six to eight hour work day.  AT 35-36.  The wage paid to the plaintiff

---

[2]     The record is equivocal as to when plaintiff began working with Walmart. *Compare* AT 33, 182 (both affixing her start date in March 2008) *with* AT 108 (reflecting a hiring date of April 19, 2008).

by Walmart was $8.80 per hour, and she typically worked five days per week for a total of approximately twenty-five to thirty-two hours weekly. AT 36.

Plaintiff's disability claim arises principally from her diagnoses of SLE and fibromyalgia.  AT 17.  She was diagnosed with SLE in September 1990 by a physician not identified in the record before the court, and has been under the intermittent care of Dr. Charles Schaeffer for that condition since 1999.[3]  AT 17, 320.  To address her SLE symptoms, plaintiff has taken Prednisone since 1990, and Plaquenil since 1991.[4] AT 320, 408-09.

During a follow-up visit on October 13, 2008, plaintiff complained to Dr. Schaeffer of muscular discomfort on her left side flank/rib area that she began experiencing after picking up her grandchild.  AT 17, 408. After examining the plaintiff, Dr. Schaeffer determined that she had normal

---

[3]     At the time she was first seen by Dr. Schaeffer in 1999, plaintiff's fibromyalgia was inactive.  *See* AT 320.

[4]     Prednisone is a steroid used to treat lupus as a way to control the condition, though it cannot cure it.  *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601102.html. Plaquenil is used to treat lupus in patients whose symptoms have not improved with other treatments.  *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601240.html.

motor strength in all muscle groups in her upper and lower extremities, with a full range of motion in all upper extremity joints and her hips, and did not have any tenderness or synovitis.  AT 17-18, 411.  Dr. Schaeffer also discerned no active lupus at the time of his examination, concluding that the pain plaintiff complained of was of muscular and not of respiratory origin.  AT 411.  In his assessment, Dr. Schaeffer opined that because plaintiff did not have any difficulty in breathing deeply, he doubted that she experienced any "active pleuritic process."  AT 411.

Plaintiff has received primary health care services over time principally from Dr. Joseph Sellers and Physician's Assistant ("PA") Frederick Atkins from Cobleskill Health Center, where she has been treated since at least 1992.  *See* AT 250-271.  Records of plaintiff's treatment from Dr. Sellers and PA Atkins reflect many references to her experiencing pain and fatigue as well as treatment for SLE.  *See, e.g.*, AT 248, 251, 253-54, 256, 262-64.  PA Atkins prepared a physical capacity evaluation with regard to plaintiff on August 21, 2008.  AT 201-02, repeated AT 439-40.  In his evaluation, PA Atkins opined that plaintiff can sit for two hours, stand for three hours, and walk for three hours in an

eight hour work day, and can lift or carry ten pounds occasionally and can frequently lift or carry less than ten pounds. *Id.* In that assessment PA Atkins also noted some limitations in plaintiff's ability to bend/stoop, squat, kneel, crawl, and reach above her shoulder, and noted that she should not work around heights, moving machinery, temperature extremes, fumes and gases, or humidity. *Id.* There is no indication that PA Atkins' report was signed, reviewed and/or approved by Dr. Sellers. *Id.*

Plaintiff was consultatively examined by Dr. Kautilya Puri, M.D. on August 28, 2007. AT 207-10. As a result of that examination, Dr. Puri diagnosed plaintiff as suffering from SLE, CAD status post-stent placement, and status post-cervical neck surgery, noting that she "did not have any objective limitations of communication, fine motor or gross motor activities" or to "gait or to her activities of daily living and examination". AT 210. Dr. Puri recommended that plaintiff not lift any heavy weight or carry out any strenuous activity. *Id.*

On October 4, 2007, Dr. Judith Bodnar, a state disability consultant, assessed plaintiff's RFC based upon her review of medical records but without examining her, opining that she is capable of standing, sitting or

7

walking for six hours in an eight hour work day, and carrying twenty

pounds - an RFC finding which is consistent with the ability to perform light

work under the Commissioner's regulations.[5]  AT 193.

In addition to her SLE and inactive fibromaylagia, plaintiff also

claims disability related to a 2004 surgery on her cervical spine.  In

September 2004, plaintiff suffered a herniated disk for which she

underwent an anterior cervical decompression fusion at the C5-6 level in

her neck.  AT 207, 320.   Following that surgery a conservative follow-up

---

[5]         By regulation light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

approach was recommended for her.[6]  AT 320.

Plaintiff further attributes her inability to work to CAD dating back to 2006.  After plaintiff experienced atypical chest pain and based upon an abnormal stress test on February 7, 2006, AT 227-28, 351-52, Dr. Leonard Stein recommended a cardiac catheterization for treatment of plaintiff's CAD.  AT 283-84, 351-52.  Plaintiff thereafter underwent cardiac catheterization and placement of a stent in her coronary artery on March 31, 2006; those procedures were performed by Dr. Dhananjai Menzies. AT 276-78.

Following plaintiff's cardiac catheterization, Dr. Menzies conducted follow-up care and examined plaintiff in April and July of 2006.  AT 314-15, 318-19.  During these two visits, Dr. Menzies prescribed Plavix and Aspirin for her post-intervention recovery.  AT 314.  Plaintiff followed up with Dr. Menzies again in February 2007, at which time Dr. Menzies discontinued Plavix, but encouraged plaintiff to begin statin therapy for her

---

[6]     In her Disability Report plaintiff did not claim her spinal condition as imposing an impediment to finding employment, listing only SLE as limiting her ability to work.  *See* AT 139.

high cholesterol, and to cease smoking.[7,8]  AT 303-04, 437.  Dr. Menzies

saw plaintiff again on May 20, 2008, after the commencement of her

employment at Walmart.  AT 434-35.  During that visit plaintiff informed

the doctor that in her job she was on her feet for approximately eight

hours per day, but that she did not suffer any pain or shortness of breath

on exertion.  AT 434.

II.     PROCEDURAL HISTORY

        A.      Proceedings Before the Agency

        Plaintiff protectively filed an application for SSI benefits on or about

March 20, 2007, alleging an ongoing disability with an original onset date

of January 21, 1992.  AT 102-07, 135.  Following the denial of that

application on October 5, 2007, *see* AT 69, 81-84, a hearing was

conducted, at plaintiff's request, before Administrative Law Judge ("ALJ")

Michelle S. Marcus on March 18, 2009 to address her claim for benefits.

---

[7]      Plaintiff later informed Dr. Menzies that she did not fill her prescription for statin medication because she could not afford it.  AT 436.

[8]      Plaintiff smokes approximately eight cigarettes to one-half of a pack of cigarettes daily, although she has been able to reduce her smoking level from her previous habit of smoking one pack per day.  AT 53.  According to plaintiff's medical records she has smoked for over thirty-five years, and has been unable to stop despite extensive efforts.  AT 237, 239, 318, 320, 351.

AT 25-68.  Following that hearing, ALJ Marcus issued a decision in which she found that plaintiff was not disabled at any time between March 20, 2007, the date of her application, and the time of the decision.[9]  AT 12-23.

In her decision, ALJ Marcus conducted a *de novo* review of the record evidence, applying the now-familiar, five step prescribed test for evaluating claims of disability.  At step one, the ALJ concluded that plaintiff has in fact engaged in substantial gainful activity ("SGA") since the date the application for SSI was filed.  AT 14.  The ALJ rejected plaintiff's argument that her work activity from in or about March 2008 to September 2009 should properly be regarded as an unsuccessful work attempt because it lasted more than three months and did not end due to her existing impairment.  *Id.*  The ALJ noted that the plaintiff's employment at Walmart essentially ended when a box fell on her at work in September 2008, and she failed to allege whether she was provided special accommodations at work due to her existing impairments, and therefore

-----

[9]     Although the plaintiff alleges an onset date of 1992, under the Act, SSI benefits are only payable starting the month after application, which in this case is April 2007.  *See* 20 C.F.R. § 416.501.  At the hearing, ALJ Marcus was therefore only concerned with any disability allegedly suffered by the plaintiff following her March 20, 2007 application.

concluded that plaintiff's work activity from March to September of 2008 occurred during a period of remission of her lupus and did not end due to her SLE impairment.  *Id.*

Despite her SGA finding, which could have ended the disability inquiry, the ALJ proceeded to step two, where she found that plaintiff has several impairments qualifying as severe, including SLE, fibromaylagia, status post spinal fusion with hyper-extension injury in September 2008, status post-stent placement due to CAD and chest pain secondary to musculoskeletal strain.  *Id.*  She went on to conclude at step three, however, that those impairments, either singularly or in combination, do not meet or medically equal any of the listed, presumptively disabling impairments included in 20 C.F.R. Pt. 404, Subp. P, App. 1, noting that plaintiff's "SLE has been quiescent with no specific complications."  AT 14-15.

Before proceeding to step four, the ALJ surveyed the record and concluded that despite her medical conditions, plaintiff retains the RFC to perform a full range of light work. AT 15, 22.  In making that finding the ALJ rejected plaintiff's testimony concerning pain as not fully credible,

noting that while she does suffer from medically determinable impairments that could reasonably be expected to cause the level of symptomology claimed, her statements concerning the intensity, persistence and limiting affects of those symptoms are not supported by evidence in the record, including from her own treating sources.  AT 17-22.

After determining at step four that plaintiff has no relevant past work experience, the ALJ proceeded to step five where, in reliance upon the medical-vocational guidelines (the "grid") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, considering plaintiff's RFC, age, education, and work experience, she concluded that a finding of "not disabled" was warranted, applying Rule 202.20.[10]  AT 23.  The ALJ's opinion became a final determination of the agency on May 13, 2010, the date on which plaintiff's request for review of the decision by the Social Security Administration

---

[10]      Reliance by ALJ Marcus upon Rule 202.20 of the grid was misplaced since that rule requires a high school education or a GED diploma, neither of which plaintiff possesses.  The medical-vocational rule that should have been applied to plaintiff's circumstances is Rule 202.17, which presumes that the claimant can perform and meet the exertional requirements of light work and additionally is a younger individual with limited education (no high school diploma), with previous work experience of "[u]nskilled or none."  Since that rule also directs a finding of no disability the ALJ's reliance upon Rule 202.20, if error, was harmless.  I note, moreover, that in her brief plaintiff does not raise this argument in support of the challenge to the Commissioner's determination.

Appeals Council was denied.  AT 1-5.

 B. <u>This Action</u>

 Having exhausted her administrative remedies within the agency, plaintiff commenced this action on July 12, 2010.  Dkt. No. 1.  Issue thereafter was joined on November 9, 2010 by the Commissioner's filing of an answer, accompanied by an administrative transcript of the evidence and proceedings before the agency.  Dkt. Nos. 7, 8.  With the filing of plaintiff's brief on January 27, 2011, Dkt. No. 11, and that on behalf of the Commissioner on April 13, 2011, Dkt. No. 15, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rules 72.3(d).  *See also* FED. R. CIV. P. 72(b).

III. <u>DISCUSSION</u>

 A. <u>Scope of Review</u>

 A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated*

*Edison Co.*, 308 U.S. at 229, 59 S. Ct. at 217); *Martone*, 70 F. Supp. 2d at

148 (quoting *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1420).  "To

determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from

its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of Section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

> B.     Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

 In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

18

from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.      The Evidence in This Case

          1.      Substantial Gainful Activity

As a threshold matter, at step one of the disability analysis the ALJ

found that plaintiff has in fact engaged in substantial gainful activity since

the relevant start date of March 20, 2007, based on her work experience

at Walmart.  AT 14.  This is a finding which, if upheld, ends the inquiry and

suffices to support the finding of no disability. *Kelly v. Comm'r of Soc.

Sec.*, No. 1:10-CV-0949, 2011 WL 673516, at *5 (N.D.N.Y. Dec. 5, 2011)

(Peebles, M.J.); *Lopez v. Astrue*, No. 09-CV-1678, 2011 WL 6000550, at

*7 (E.D.N.Y. Nov. 28, 2011); *see also* 20 C.F.R. § 416.920(b).

To determine whether a claimant has engaged in SGA, the

Commissioner primarily considers earnings.  20 C.F.R. § 416.974(a)(1),

(b)(1).   The Commissioner's regulations set forth a formula to be utilized

in determining whether a claimant's earnings reflect SGA.  *See* 20 C.F.R.

§ 416.974(b)(2).  While conceding that her earnings at Walmart rose to a

level sufficient to establish SGA under the governing formulaic provision,

plaintiff argues that it nonetheless should have been regarded as an unsuccessful work attempt.

An unsuccessful work attempt occurs when a claimant performs at SGA level for a period of six months or less, but an impairment forces him or her to stop working or has the effect of reducing the amount of work performed to the point where earnings fall below SGA level.  20 C.F.R. § 416.974(c)(1).  In order to demonstrate an unsuccessful work attempt in this case, plaintiff bears the burden of showing that her disability forced her either to stop working or to reduce her amount of work to the extent that earnings fell below SGA level.  *See* 20 C.F.R. § 416.974(c)(4) (requiring a claimant to show: frequent absences from work due to the impairment, unsatisfactory work due to the impairment, work during a period of temporary remission of the impairment, or removal of special conditions at work that were essential to performance).

Pivotal to plaintiff's unsuccessful work attempt argument is the claim that her injury in September 2008, while working at Walmart, exacerbated her pre-existing cervical degenerative disc disease.  This contention, however, lacks the support of any medical records in the administrative

21

transcript, and instead relies solely upon plaintiff's subjective hearing

testimony to the affect that after being struck by the box, her neck "didn't

release like a normal person."  AT 39.  Although plaintiff argues that her

C5-6 fusion was evident on x-rays taken after the injury in Walmart, there

is a total lack of support in the objective evidence for her contention that

the injury exacerbated her cervical degenerative disease.  Further,

evidence in the record reflects that plaintiff registered complaints of

ongoing cervical pain and stiffness in the months prior to her employment

at Walmart.  AT 474-76.  The medical records following her workplace

injury in September 2008 are conspicuously silent regarding her claim that

the workplace accident aggravated her condition.  The ALJ therefore

properly found that the hyper-extension injury in her cervical region was a

new injury and not an aggravation of her existing impairment, and that

finding is supported by substantial evidence.  AT 14.

While the ALJ's finding of SGA following the application for SSI

benefits is well-supported and effectively establishes that plaintiff was not

disabled at the relevant times, the ALJ went on to address application of

the remaining four steps of the disability protocol, concluding that

consideration of those elements confirmed the finding of no disability.  AT

14-23.  Plaintiff challenges those findings, and I will therefore address

them notwithstanding plaintiff's critical failure to surpass the SGA

requirement at step one.

### 2.    Residual Functional Capacity

In her decision ALJ Marcus concluded that despite her physical

conditions, plaintiff retains the RFC to perform a full range of light work.

AT 15-22.  In reaching that conclusion the ALJ accorded significant weight

to the report of a consultative examination conducted by Dr. Puri, as well

as opinions rendered by state agency reviewing physician Dr. Bodnar, and

rejected an assessment of PA Atkins which was significantly more limiting.

AT 15-22.  In addition, the ALJ gave only "very little weight" to a statement

from plaintiff's rheumatologist, Dr. Schaeffer, to the effect that plaintiff

cannot work in light of her discomfort.  AT 21-22.  Plaintiff now argues that

the ALJ's RFC determination is not supported by substantial evidence,

and resulted from the ALJ's failure to fully develop the record.

A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

23

C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.* § 404.1545(a)-(e); *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess a plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 588).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.

Supp. 300, 309-10 (E.D.N.Y. 1997).

When addressing a plaintiff's RFC, an ALJ is required to note "how

the evidence supports each conclusion, citing specific medical facts (e.g.,

laboratory findings) and nonmedical evidence (e.g., daily activities,

observations)" to support each conclusion.  SSR 96-8p, 1996 WL 374184,

at *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d

Cir. 1998).  Additionally,

> [t]he RFC assessment must first identify the
> individual's functional limitations or restrictions and
> assess his or her work-related abilities on a
> function-by-function basis, including the functions
> in paragraphs (b), (c), and (d) of 20 CFR §§
> 404.1545, 416.945.  Only after that may RFC be
> expressed in terms of the exertional levels of work,
> sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F.

Supp. 2d 480, 490 (W.D.N.Y. 2004).  An ALJ's failure to explain the

evidence he or she relied upon in assessing RFC constitutes a ground for

a remand.  *See Compo v. Comm'r of Soc. Sec.*, No. 6:05-CV-973

(FJS/RFT), 2009 WL 2226496, at *9 (N.D.N.Y. July 23, 2009) (Scullin,

25

S.J. and Treece, M.J.) (citation omitted); *Hodge v. Astrue*, No. 07-CV-0162, 2009 WL 1940051, at *10 (N.D.N.Y. July 7, 2009) (McAvoy, S.J.) (citation omitted).

The ALJ's RFC finding draws considerable support from the report of Dr. Puri's examination of plaintiff.  During that examination, plaintiff appeared not to be in acute distress and demonstrated a normal gait, with the ability to walk on heels and toes and to fully squat.  AT 208.  Dr. Puri also observed that plaintiff was able to maneuver on and off the exam table without assistance, and to rise from her chair without difficulty.  *Id.* Upon conducting a musculoskeletal exam, Dr. Puri found that plaintiff's cervical and lumbar spine revealed full flexion, extension, lateral flexion and full rotary movement bilaterally, with no evidence of scoliosis, kyphosis or abnormality of the thoracic spine.  AT 209.  Plaintiff also demonstrated a full range of motion in her shoulders, elbows, forearms, wrists and fingers bilaterally, and full range of motion in hips, knees and ankles bilaterally.  *Id.*  Dr. Puri further found that plaintiff possessed strength of "5/5 bilaterally" in upper and lower extremities, but noted the existence of "a few trigger points in her neck and upper back."  *Id.*  In his

medical source statement Dr. Puri concluded that

> [t]he claimant did not have any objective limitations
> in communication, fine motor or gross motor
> activities.  There were no objective limitations to
> the claimant's gait or to her activities of daily living
> on examination today.  It is recommended that the
> claimant not lift any heavy weight or carry out any
> strenuous activity secondary to her above history.

AT 210.  Dr. Puri's findings are fully consistent with the ALJ's RFC

determination.  It is well accepted that the opinions of such a consultative

examiner can constitute substantial evidence in support of an ALJ's

determination.  *Monquer v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983);

*see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995).

Plaintiff further challenges Dr. Puri's findings since they are not

stated in terms that correlate directly to a claimant's RFC.  To be sure, in

order to serve as substantial evidence, a consulting physician's opinions

cannot be so vague as to render them useless.  *See Curry v. Apfel*, 209

F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20

C.F.R. § 404.1560(c)(2).  There is no requirement, however, that

evaluating doctors set forth their examination results in RFC report forms.

All that is required by 20 C.F.R. § 404.1545(a) is that the administrative

law judge, not the doctors, assess the plaintiff's exertional capabilities and abilities to sit, stand, walk, lift, carry, push, and pull based on objective medical evidence.  20 C.F.R. § 404.1545(a)-(b).  As long as a medical consultant states his or her opinions in specific terms that permit an ALJ to draw meaningful conclusions concerning plaintiff's limitations, it is legally irrelevant that those opinions are not set forth in an RFC assessment or similar format.[11]  20 C.F.R. § 404.1545(a)-(e); *Tomas v. Astrue*, No. 09-2372-JAR, 2011 WL 3298531, at *7, n.41 (D. Kan. Aug. 1, 2011) (Robinson, J.) (citing *James v. U.S. Dep't of Health & Human Servs.*, No. 94-6124, 1995 WL 65454, at *1 (10th Cir. Feb. 17, 1995)).

   In this instance, Dr. Puri's opinions undeniably would have been

---

   [11]  Although other courts within our circuit have not explicitly rejected the legal necessity of an RFC assessment or form, reliance upon a consultative physician's opinion is well accepted.  20 C.F.R. § 404.1545 (a)-(e); *see Zahirovic v. Astrue*, No. 6:06-CV-981, 2008 WL 4519198, at *9 (N.D.N.Y. Sept. 30, 2008) (stating that the ALJ, and not the physician, has a "duty to outline, on a function-by-function basis, a claimant's restrictions in his or her ability to perform work related activities"); *Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5, *7 (N.D.N.Y. July 27, 2011) (Bianchini, M.J.); *see also O'Grady v. Comm'r of Soc. Sec.*, No. 09-CV-1121, 2011 WL 3652432, at *6 (N.D.N.Y. July 5, 2011) (Bianchini, M.J.) ("It is well settled that an ALJ is entitled to rely upon the opinions of . . . non-examining State agency medical consultants, since such consultants are deemed to be qualified as experts in social security disability."); *Leach ex rel. Murray v. Barnhart*, No. 02 Civ.3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("[s]tate agency consultants are qualified as experts in the evaluation of medical issues in disability claims . . . their opinions may constitute substantial evidence if they are consistent with the record as a whole").

more meaningful had they been accompanied by a more pointed assessment detailing plaintiff's physical capabilities.  However, they do appropriately serve to supply, in part, the substantial evidence needed to support the ALJ's determination, particularly when considered in combination with the findings of other consultants who did opine regarding plaintiff's ability to sit, stand, walk, and carry objects.

Based upon a review of plaintiff's medical records, for example, Dr. Bodnar, a non-examining consultant, concluded that all of plaintiff's joints are normal and do not show signs of weakness or inflammation.  Further, Dr. Bodnar also found plaintiff to have normal motor strength and dexterity.  Finally Dr. Bodnar observed that plaintiff's RFC included an ability to stand, sit, and walk for six to eight hours per day, and to carry approximately twenty pounds.  AT 21, 193-94.

Even though Dr. Bodnar was a non-examining physician, ALJ Marcus accorded Dr. Bodnar's report "substantial weight" because she is a specialist in internal medicine, and reviewed all available medical evidence in the record up to the time of her evaluation in October 2007. *Id.*  Moreover, ALJ Marcus found that Dr. Bodnar's report was consistent

with the objective evidence in the record which showed that plaintiff was in fact able to work for six to eight hours per day sitting, standing, and/or walking while she was employed at Walmart and completed a full-time six to seven week computer course.  AT 21, 33-36, 193.  Under 20 C.F.R. § 416.927(f)(2)(ii), evaluations by state agency medical consultants constitute expert opinion evidence for purposes of evaluating SSI claims and can be given weight if supported by medical evidence in the record.  *See also Diaz*, 59 F.3d at 313, n.5.

Plaintiff argues that Dr. Bodnar's opinions should be rejected since they do not take into consideration medical evidence relating to the period of time from late 2007 through 2009.  It is true that stale, conclusory reports of state agency officials based upon incomplete medical records may not constitute substantial evidence.  *Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 (W.D.N.Y. Mar. 31, 2009) (Siragusa, J.).  In this instance, however, none of the records from that subsequent time period, aside from the conclusory and unsupported statement of Dr. Schaeffer, directly controvert Dr. Bodnar's opinions.

To be sure, in order to be helpful to the process Dr. Bodnar's

opinions could have been stated in more detail.  One could argue that based on the fact that Dr. Bodnar was a non-examining medical consultant who authored just five lines concerning plaintiff's impairments, according any substantial weight to her opinion may have been misplaced. In light of the fact that almost all other doctors referred to in this proceeding have given similar diagnoses, however, the ALJ's decision to accord her opinion substantial weight is not reversible error.  *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 365 (N.D.N.Y. 2007) (despite conflicting medical opinions, no reversible error occurred when ALJ determination was supported by substantial evidence); *see* 20 C.F.R. § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *see also* 20 C.F.R. § 404.1527(d)(1)-(6) (listing factors contributing to the appropriate weight of particular medical opinions as: examining relationship; treatment relationship, including: length, and nature and extent of treatment relationship; supportability; consistency; specialization; other factors); *but see Dwyer v. Apfel*, 23 F. Supp. 2d 223, 228 (N.D.N.Y. 1998) (finding reversible error when ALJ failed to adequately explain the reasoning behind the limited

31

weight given to an opinion that was supported by consistent findings throughout the record).

Plaintiff also challenges the ALJ's decision to accord opinions from her treating rheumatologist, Dr. Schaeffer, little weight.  ALJ Marcus gave "very little weight" to the opinion of Dr. Schaeffer due to inconsistencies within his report on February 29, 2008.  AT 416-20.  Specifically, Dr. Schaeffer's physical exam resulted in a near-normal diagnosis of plaintiff's symptoms.  AT 419.  Notably, Dr. Schaeffer found plaintiff's motor strength to be normal without atrophy, found no tenderness, no synovitis (a medical term for inflammation of the synovial membrane that lines the joints which possess cavities, known as synovial joints), and no gross restricted bilateral motion in the shoulders, elbows, wrists, knees, and ankles.  AT 419.  Further, Dr. Schaeffer found that plaintiff's hips, lower extremities, small joints of the hands and of the feet all functioned with nontender motion.  *Id.*  After the report of his physical examination of plaintiff, Dr. Schaeffer in his assessment concluded that there were "[n]o clinical findings at this time to suggest a definite active lupus process" and plaintiff had no "active inflammatory arthropathy."  *Id.*  Despite this

conclusion, at the end of the report, Dr. Schaeffer wrote that "[o]n review

with the patient it appears that she would be unable to work in any

endeavor given her discomforts." *Id.* As a result, ALJ Marcus correctly

found Dr. Schaeffer's opinion was contrary to his own physical

examination showing that plaintiff had "full range of motion of all joints in

the upper and lower extremities with no evidence of tenderness or

synovitis." AT 21.

I note that although stating in notes dated February 29, 2008 that

plaintiff "would be unable to work in any endeavor given her discomforts[,]"

AT 419, Dr. Schaeffer declined plaintiff's request for opinions concerning

her functional capacities, indicating that they should instead be solicited

from a physical therapist better versed in providing RFC assessments. AT

417. In any event, Dr. Schaeffer's opinions concerning plaintiff's inability

to work due to discomfort are impermissibly vague to meaningfully support

a conclusion regarding plaintiff's capacity. *Curry,* 209 F.3d at 123. To the

extent that Dr. Schaeffer is suggesting plaintiff should be considered

disabled, based upon her condition, that is an opinion reserved for the

Commissioner and not entitled to any special deference despite his status

33

as a treating physician.  20 C.F.R. § 416.927(d)(3) (greater weight

accorded opinions supported by medical signs and findings); *see Mongeur*

*v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (opinion of treating

physician not accorded extra weight when the discontinuity of treatment

does not give treating physician "unique position to make a complete and

accurate diagnosis"); *Parker v. Harris*, 626 F.2d 225, 232 (2d Cir. 1980)

(opinion of treating physician not binding when contradicted by substantial

evidence).  In addition the statement of Dr. Schaeffer is particularly

unhelpful in assessing plaintiff's limitations since in it he provides no

objective guidance concerning plaintiff's limitations, nor does he state with

any degree of specificity whatsoever what plaintiff is and is not capable of

doing from an exertional standpoint.

It should also be noted that Dr. Schaeffer's reference to discomfort

does not end the inquiry.  The fact that plaintiff suffers from some degree

of discomfort does not automatically disqualify her as disabled, since

"disability requires more than mere inability to work without pain." *Dumas*

*v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

It is true that PA Atkins provided a physical assessment concerning

plaintiff's capabilities on August 21, 2008, and that his assessment is more limiting than the ALJ's RFC finding.  *See* AT 201-202.  That assessment was considered by the ALJ, but was assigned "[no] more than slight weight."  AT 22.  PA Atkins' opinions are not entitled to controlling weight because as a physician's assistant, Atkins does not qualify as a treating source and instead falls within the second tier of "other" medical sources.  *See* 20 C.F.R. § 416.913(d)(1); 20 C.F.R. § 416.913(a); *see also* SSR 06-03P, 2006 WL 2329939, at *1 (Aug. 9, 2006).  Moreover, PA Atkins' opinions are inconsistent with other evidence in the record, and are seriously called into question by the fact that at the time the assessment was made, plaintiff was working at Walmart in a position she herself identified as requiring a light level of exertion, that she stand all day for eight hours and, at times, lift objects.  *See* AT 35-36.

In sum, the ALJ's finding regarding plaintiff's RFC, with its exertional components, is supported by substantial evidence, including by virtue of plaintiff's work history at Walmart during the period of her alleged disability.  I therefore recommend rejection of the portion of plaintiff's challenge addressing the ALJ's RFC finding.

### 3.   Credibility

During the hearing, plaintiff testified to limitations caused by the pain which she experiences from her medical conditions.  *See* AT 41-49. Plaintiff's testimony was rejected in part by the ALJ, who found that while she suffers from medical conditions that could reasonably be expected to cause the symptoms alleged, her statements concerning their intensity, persistence, and limiting effects are not wholly credible to the extent that they are inconsistent with her RFC finding.  Plaintiff argues that the ALJ impermissibly discounted her subjective complaints of disabling pain and failed to properly articulate the basis for that rejection.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  *See* 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*, 615 F.2d at 27).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*. See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how

to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context; including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which could reasonably produce such pain, it is entitled to considerable weight.[12]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony,

---

[12] In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

including: 1) daily activities; 2) location, duration, frequency and intensity

of any symptoms; 3) precipitating and aggravating factors; 4) type,

dosage, effectiveness and side effects of any medications taken; 5) other

treatment received; 6) other measures taken to relieve symptoms; and 7)

other factors concerning functional limitations and restrictions due to pain.

20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp. 2d at 151 (quoting *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.,*

728 F.2d 588, 591 (2d Cir. 1984).

Plaintiff testified during the hearing that she is unable to sit comfortably for more than two hours without getting up and moving around for fifteen to twenty minutes, and is unable to walk for more than fifteen to twenty-five minutes without pain.  AT 41-42.  Plaintiff stated that she is in pain between two to three days per week, in different areas and at different levels of intensity.  AT 46.  Plaintiff also testified that she is only able to stand between one and two hours per day.  AT 47.  Plaintiff acknowledged being able to reach in front of her, but stated she can barely reach overhead in light of her shoulders.  AT 48.  In terms of lifting and carrying, plaintiff testified that she can lift about eight pounds, or the equivalent of a gallon of milk.  AT 48-49.

Addressing those subjective claims, the ALJ noted initially that despite her complaints of persistent pain attributed to her SLE and fibromyalgia, plaintiff has seen her rheumatologist only on an intermittent basis.  Further, despite the doctor's suggestion that she schedule a follow-up appointment for two months following her February 29, 2008 visit,

plaintiff did not return to the rheumatologist until October, 2008.[13]  AT 17.

In addition, the ALJ observed that Dr. Schaeffer's treatment notes failed to

substantiate plaintiff's pain to the level claimed.  AT 17-18.

Plaintiff's claims of disabling pain are additionally undermined by her

failure to complete physical therapy despite the fact that it was providing

her with a benefit and she was meeting most of her treatment goals.  AT

561.  While plaintiff explained her decision not to utilize a TENS unit

because it left a vibrating sensation in her back and she feared using such

an electrical unit because of the metal plate in her back, it was noted that

physical therapy utilized other methods to address pain besides the TENS

unit, including heat, ice, and exercises.[14]  AT 561.

---

[13]      To some degree this fact is marginalized by the explanation given for her failure to obtain more regular treatment.  It is well-established that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations" provided by the claimant.  S.S.R. 96-7p, 1996 WL 374186, at *7 (July 2, 1996); *see Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *12 (N.D.N.Y. Jan. 31, 2008) (Treece, M.J.); *Abdus-Sabur v. Comm'r Soc. Sec.* No. 06-CV-4934, 2009 WL 5178439, at *7 (E.D.N.Y. Dec. 31, 2009) (Townes, J.).  Plaintiff maintains that at some points her treatment with Dr. Schaeffer stopped due to a loss of health insurance,  AT 298-302, 415-420; Pls.' Br. 23 (Dkt. No. 11), and her poor financial situation.  Both of plaintiff's explanations offer reasonable explanations for her lack of ongoing treatment.  *See Luteri v. Barnhart*, No. 3:03CV393, 2004 WL 1660580, at *12 (D. Conn. Mar. 26, 2004) (Fitzsimmons, M.J.).

[14]      A "TENS" unit, transcutaneous electrical nerve stimulation, uses electric current produced by a device to stimulate the nerves for therapeutic purposes.  Nat'l

The record is also equivocal when it comes to the extent of plaintiff's pain.  For example, plaintiff has given conflicting statements regarding her ability to sit, noting that she is working toward receiving a GED degree but stating she does not know if she could perform computer work for eight hours a day because of the sitting requirements associated with such a position.  AT 41.  Plaintiff noted, however, that she can sit comfortably for a few hours at a time and after moving around is able to sit for a couple more hours.  AT 41-42.  The requirement of light work does not include lengthier periods of sitting without changing positions.  *See* 20 C.F.R. § 416.967(b).  Indeed not even sedentary jobs, which typically require more sitting than light work, *Vargas v. Sullivan*, 898 F.2d 293, 294 (2d Cir. 1990), do not preclude such periodic changing of positions; as the Second Circuit has noted, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran v. Barnhart*, 362 F.3d 28, 33

---

Ctr. for Biotech. Info., *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Libr. of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055, (last visited Feb. 6, 2012).

(2d Cir. 2004).

In sum, the ALJ's credibility determination is both well explained and supported by substantial evidence.

## IV.   SUMMARY AND RECOMMENDATION

As a threshold matter, plaintiff's claim of disability and entitlement to SSI benefits is fatally flawed by virtue of her having engaged in substantial gainful activity at Walmart in a position with job requirements wholly inconsistent with her claimed limitations during part of the period of her claimed disability .  This finding alone provides a basis for affirming the Commissioner's determination.

Proceeding past step one of the five step, sequential evaluation, I conclude that the ALJ's RFC findings at the remaining stages of the disability protocol are supported by substantial evidence, and that she properly rejected plaintiff's subjective complaints of disabling pain and the explanation given for doing so is supported by substantial evidence. Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED that defendants' motion for judgment on the

pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint in this action DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:        March 2, 2012
              Syracuse, NY

43